[Civ. No. 3477. First Appellate District, Division Two.—December 31, 1920.]

## FRANK P. BACON, Appellant, v. EDWIN A. MESERVE, Respondent.

[1] PROMISSORY NOTE — CREDIT OF ATTORNEY'S FEES — EVIDENCE — PROPER ALLOWANCE.—In this action on a promissory note given by the defendant for a loan of money belonging to the plaintiff, the allowance of a certain credit, which was claimed by the defendant as attorney's fees, was properly allowed under the evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Abrahams and P. B. D'Orr for Appellant.

Meserve & Meserve and Shirley E. Meserve for Respondent.

BRITTAIN, J.—The plaintiff appeals from an adverse judgment awarding him $236.91 in a suit on a promissory note of the defendant for $2,500. He makes the single contention that under the evidence, the trial court should not have allowed a certain credit of $2,000 which was claimed by the defendant as attorney's fees, among other credits, some of which were allowed and one of which was rejected by the court. While at the outset of the appellant's brief it is said this is the principal matter involved in the appeal, no other proposition is discussed. This court will not search the record for grounds for reversal, if there be such, on which counsel for appellant place so little reliance as to fail to mention them in their brief. The appellant makes no claim that the findings are not responsive to the pleadings, nor that they do not support the conclusions of law. The appeal, therefore, presents a single question of fact, or, more accurately, of mixed law and fact.

The evidentiary facts are not controverted and the only matters of law are those applicable to the evidentiary facts from which the single ultimate fact was deduced by the trial court. Stated in their chronological order, the evidentiary facts are as follows:

Plaintiff has some connection with a banking institution in Los Angeles and is interested in investments. W. N. Hamaker is connected with the same bank and has attended to much of the plaintiff's financial business. It is claimed on behalf of the plaintiff that in the particular matter Mr. Hamaker was the plaintiffs' trustee. From further facts it will readily be seen that he was acting generally as the plaintiff's agent and the apparent scope of his authority was very broad. For several years, from time to time, acting for the plaintiff, Mr. Hamaker had retained the defend-

ant as the plaintiff's attorney in separate matters. There was no general retainer. The arrangements made by Mr. Hamaker with the defendant were carried out by the plaintiff in his dealings with the defendant. Apparently, during this course of dealing, carried on through Mr. Hamaker, the plaintiff never in any way questioned his authority.

On September 7, 1917, the defendant borrowed through Mr. Hamaker $2,500, which was admittedly the plaintiff's money. The note of the defendant was made payable to Hamaker, who thereupon indorsed a personal guarantee upon it and transferred it to the plaintiff. The plaintiff owned, or was at least interested in the ownership of, a building known as the Metropolitan Building, in which Messrs. Lester Robinson, Fred P. Barman, the Leasehold Company and others had some interest by way of lease or equity. Mr. Hamaker was on friendly terms with the members of this group. They were indebted to the plaintiff, and Mr. Hamaker, for the plaintiff, undertook to bring about an adjustment of differences between them and the plaintiff. Just as he had done in former matters, he retained the defendant as the attorney. There were lengthy negotiations and it was finally agreed that the Robinson group should transfer their interests in the Metropolitan building to Mr. Hamaker for the plaintiff, and in satisfaction of the plaintiff's claim against them, upon being given what amounted to an option to repurchase the building or their interests in it, at any time before January 1, 1921, for the amount then agreed upon as due from them to the plaintiff and satisfied by their transaction. When the total amount of the items of their pre-existing indebtedness was computed it aggregated in the neighborhood of $35,000. Before the transaction was closed, the question of attorney's fees was discussed between the defendant and Mr. Hamaker, then between Mr. Hamaker and Mr. Robinson, and finally by the three.

Mr. Hamaker's testimony in regard to the employment of the defendant was not direct, but it appeared that it was Mr. Bacon's money that was involved in the transaction, and that upon its determination depended the loss or gain of Mr. Bacon: Mr. Hamaker was asked by the trial judge: "And when you went to Mr. Meserve did you expect to pay him or did you expect Mr. Bacon to pay him?" In reply

the witness stated: "Let me say this: That in that I was following a general rule which I followed for a great many years in the bank and out, in which in almost every instance I sought to saddle the expense on the other fellow; for instance, the banks do that as to attorney fees; and each note and every obligation sought to be collected was predicated upon a note which included attorney fees, so in the end the object was to seek to saddle the expense upon— The Court (interrupting): But the preliminary objection [obligation] to the attorney being directly when the person went to him, of course? A. I have always held them payable out of the proceeds of the—"

The primary obligation to the attorney, of course, is just what the trial judge indicated—that of the person who retained him—in this case of Mr. Bacon, on whose behalf Mr. Hamaker was acting. This primary obligation might have been shifted with the consent of both the attorney and the other parties, but in the present case it was not so shifted, or, if it was, it was reshifted to the plaintiff. In the first conversation between Mr. Hamaker and the defendant, the former, pursuant to his custom of shifting the burden to the other fellow, told the defendant in substance that the Robinson group should be made to pay the attorney's fees. The amount of the fees was then discussed. The settlement involved different claims, aggregating $35,000, and ten per cent of this amount, or $3,500, was suggested. Other amounts were discussed, and Hamaker and Meserve agreed that a fee of $2,000 was reasonable under all the circumstances. Hamaker then communicated with Robinson and returned with him to Meserve's office, where Robinson was told, in effect, that in addition to the option price of $35,000 for the repurchase, there would be added an attorney's fee of $2,000. Robinson made a "wry mouth" over the amount of the fee, but agreed that it should be added to the option purchase price, making it amount to $37,000 instead of $35,000, and thereupon the interests of the Robinson group were transferred to Hamaker, nominally, but in fact for the plaintiff.

If the conversation between Hamaker, Robinson, and the defendant resulted in the shifting of the burden from Bacon to the Robinson group, in accordance with Hamaker's custom, that burden was satisfied when it was included in the settle-

ment under which the Robinson group transferred the property to Hamaker for Bacon. The defendant was entitled to his fee. He could not, in any way, have maintained a claim for a fee against Robinson and his group after the transfer had been made, nor was Robinson and his group in any way obligated to pay any sum of money to the plaintiff or the defendant. If the Robinson group should never exercise the option of repurchase, they were freed of all obligations by the transfer, and the transfer inured solely to the benefit of the plaintiff. The plaintiff having received full satisfaction for his claims against the Robinson group, *including the attorney's fee of two thousand dollars,* the primary obligation which Hamaker had tried to shift to the Robinson group again rested upon Bacon.

[1] The contention on the part of the plaintiff that Mr. Hamaker was a mere trustee, that the title to the property in question had been transferred to him and not to Bacon, is clearly evasive. The entire title vested in him as a trustee for Bacon and for Bacon's convenience. He signed no declaration of trust either to Bacon or the defendant. The defendant could not compel Hamaker to make any trust accounting to him, while Bacon could compel his agent to transfer the title directly to him. Having received the benefit both of the transaction and of the attorney's services, the finding to the effect that the plaintiff and defendant agreed upon the sum of $2,000 as a fee is supported by the evidence concerning the conversation between Hamaker and the defendant in view of the ostensible agency of Hamaker for Bacon, and the finding that the plaintiff agreed to pay this amount is supported by the evidence that the amount of it was included in the valuation of the property transferred to the plaintiff through the agency of the trusteeship of Hamaker. There is no other question involved in the appeal.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.